**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION**

**KEITH HUMPHREY**                                                                              **PLAINTIFF**

**V.**                                    **Case NO. 4:20-CV-1158-JM**

**ALICE FULK, individually,
CRISTINA PLUMMER, individually,
HAYWARD FINKS, individually,
DUANE FINKS, individually,
REGINALD PARKS, individually,
LITTLE ROCK FRATERNAL ORDER
OF POLICE, LODGE #17, a non-profit corporation,
RONNIE MORGAN, individually,
ERIK TEMPLE, individually,
KEVIN SIMPSON, individually,
KENNETH HAMBY, individually,
STEVE DODGE, individually,
MICHAEL MCVAY, individually,
CHRIS RINGGOLD, individually,
KYLE HENSON, individually,
TRAVIS CUMMING, individually,
MARK ISON, individually,
JOHN GILCHRIST, individually,
KEVIN SEXSON, individually,
CHARLES STARKS, individually,
SHELLA ATLAS-EVANS, individually,
MATT MURSKI,
MOTOROLA SOLUTIONS d/b/a WATCHGUARD, and
RUSS RACOP**                                                                      **DEFENDANTS**

## SEPARATE DEFENDANT, DR. SHELLA ATLAS-EVANS BRIEF IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT

COMES NOW Separate Defendant, Dr. Shella Atlas-Evans, by and through her attorneys,

Thomas M. Carpenter, City Attorney, and Rick D. Hogan, Deputy City Attorney, and for her

Motion to Dismiss Amended Complaint states:

## FACTUAL SUMMARY

On September 30, 2020, Plaintiff filed this lawsuit naming twenty-three separate defendants, who constitute a mix of individuals, a publicly traded corporation, and a not for profit fraternal organization. The Complaint consists of seventy-nine paragraphs alleging a myriad of grievances including violations of federal constitutional rights, abuse of process under Arkansas law, defamation and liable, and conspiracy set out in five "counts." Attached to the Complaint, though never once referenced, cited to in support, or relied upon in the Complaint, Plaintiff filed a seventy-four-page document entitled, "HUMPHREY V. FINKS, ET AL.-COMPLAINT ADDENDUM. ("Addendum"). Although without any specific claim of constitutional harm, the Plaintiff names Dr. Shella Atlas-Evans a Labor and Employee Relations Manager working in the Human Resources Department of the City of Little Rock. Dr. Atlas-Evans is a former investigator with the EEOC Commission and a respected employee with the City. Although the Complaint recounts Dr. Atlas-Evans performing her job with the City, it fails to assert any wrongful unconstitutional conduct or harm, but instead makes allegations on behalf of third parties not subject to the lawsuit. The City has not taken any adverse employment action as to the Plaintiff.

On November 18, 2020, Plaintiff filed an Amended Complaint against Separate Defendant Atlas-Evans alleging, first amendment and equal protection violations, conspiracy to deny Plaintiff equal protection under 42 U.S.C. 1985(3) and abuse of process. Plaintiff's Amended Complaint, even if true, would not justify relief against Separate Defendants under 42 U.S.C. 1985(3), the substantive Arkansas abuse of process law, and the first amendment and equal protection constitutional provisions. As such, Plaintiff's Amended Complaint must be dismissed as a matter of law for failure to state a claim under Fed. R. Civ. P. 12(b)(6). Further, Plaintiff's Amended

Complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b)(4), as Plaintiff has not properly served the Complaint or Amended Complaint.

## ARGUMENT

**I.     Plaintiff's Amended Complaint fails to state a claim against Separate Defendant, Dr. Shella Atlas-Evans upon which relief can be granted.**

**A. Standard for Fed. R. Civ. P. 12(b)(6).**

Plaintiff's Amended Complaint must be dismissed against Separate Defendant Atlas-Evans pursuant to Rule 12(b)(4), Local Rule 4.1 and Rule 12(b)(6) of the Federal Rules of Civil Procedure. *Braden v. Wal-Mart Stores, Inc*., 588 F.3d 585 at 592 (8th Cir. 2009), (quoting *Ashcroft v. Iqbal*, 556 U.S. 662 at 677 (2009)) and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).

According to Plaintiff's counsel the Amended Complaint contains the following additions and edits:

**PLAINTIFF'S AMENDED COMPLAINT**

Plaintiff amended the case caption and ¶¶ **6 and 8** to reflect the addition of claims against Alice Fulk and Hayward Finks ("H. Finks") in their official capacities.

Plaintiff removed the phrase "private citizen" from ¶¶ **13-25**.

Plaintiff added citations to his Addendum in ¶¶ **29-34, 37-49, 53-54, 57, 59, 62-63 and 67**.

Plaintiff slightly modified ¶ **33**.

Plaintiff added facts to ¶¶ **34-37**. These facts concern Fulk and H. Finks serving as interim chiefs of police, per City Manager memo.

Plaintiff modified the sequencing of ¶¶ **39-42 and 44-45**.

Plaintiff added facts to ¶¶ **46-49, 57-58 and 60-63**. These allegations pertain to Plaintiff's First Amendment and conspiracy counts, as well as others. Some of the added facts regard the leaking of non-releasable video involving Defendant Matt Murski and the deletion of exculpatory video by Defendant Kevin Sexson. They involve efforts by Defendant Cristina Plummer's lawyer to silence inquiries into the leak. Plaintiff also added a subheading "Evidence of Meeting of Minds" in between ¶¶ **48-49**.

COUNT I

Plaintiff added Fulk and H. Finks to Count I. Plaintiff also added *Monell* claims to his constitutional claims against Fulk and H. Finks. Plaintiff has also added more allegations regarding joint activity and First Amendment violation facts to Count I as reflected in ¶¶ **70, 73-81**.

Plaintiff still pleads alternately that: 1) LRFOP is a state actor based on the facts; and/or 2) LRFOP is a private actor involved in joint activity with a state actor.

COUNT II

Plaintiff added Fulk and Finks to his Equal Protection claims in Count II, and clarified some of the prior factual allegations. Plaintiff has also added allegations to Count II as reflected in ¶¶ **86, 88 and 90-92**.

COUNT III

Plaintiff added facts to Count III, as reflected in ¶¶ **99-101**. Factually, added Chris Burks to the allegations surrounding the lawsuits filed by him on behalf of Fulk, Plummer, H. Finks, D. Finks and Parks.

COUNT IV

Plaintiff trimmed and emphasized ¶ **105** of Count IV.

COUNT V

Plaintiff added and emphasized certain facts in **¶ 113** in support of his conspiracy claim in Count V.

**PLAINTIFF'S ADDENDUM TO AMENDED COMPLAINT**

Among other reliable documents, Plaintiff's Addendum cites sworn deposition testimony, official City documents, court records and fact-based news articles written by some of Arkansas' finest writers and news organizations. Plaintiff added 20 paragraphs and two (2) pages to his Addendum.

Plaintiff added further basis for his Addendum in **¶ 1**.

Plaintiff removed "CHIEF HUMPHREY" from **¶ 6**. Defense counsel for LRFOP pointed out that the tenure of Lt. Johnny D. Gilbert Jr. which, per ¶ 6, ended in 2018 could not have overlapped with that of Plaintiff. Counsel was correct about my oversight there.

Plaintiff added **¶ 96** which reflects the City Manager's directive that Fulk, H. Finks and Wayne Bewley would each serve as interim chiefs of police following the departure of Kenton Buckner, who was chief at the time.

Plaintiff added **¶ 116**, pertaining to the start of Fulk's interim chief period.

Plaintiff added **¶ 126**, pertaining to the end of Fulk's interim chief period.

Plaintiff added **¶ 127**, pertaining to the start of H. Finks' interim chief period.

Plaintiff added **¶ 128**, pertaining to the end of H. Finks' interim chief period.

Plaintiff added **¶ 163**, pertaining to start of H. Finks' role as acting chief.

Plaintiff added ¶ **164**, pertaining to end of H. Finks' role as acting chief.

Plaintiff added ¶ **197**, which, upon information and belief, details an instance of Fulk and H. Finks filing a complaint against Plaintiff with the Arkansas Attorney General's office. (I believe this has now been testified to in another lawsuit). Plaintiff alleges that Fulk and H. Finks knowingly mispresented facts in their complaint to the AG.

Plaintiff added ¶ **248**, which alleges straight-forwardly "PLUMMER leaked SEXSON's MVR video using FULK's computer." This has been confirmed by the City Attorney's Office, based on a May 25, 2020 memo, *infra*.

Plaintiff added ¶ **273**, which describes a press release issued by Karen Hunter's lawyer requesting an investigation into the leak of her City employment application and other personal information which wound up on Defendant Russ Racop's blog website. This is based on personal knowledge because I am that lawyer. Plaintiff alleges that Plummer's lawyer, Chris Burks, knew that she was the leaker at the time of the press release.

Plaintiff added ¶ **281**, which details Chris Burks contacting the Office of Professional Conduct and making an allegation of unauthorized practice of law against Ms. Hunter's lawyer a week after the lawyer issued the press release requesting an investigation of the leak of Ms. Hunter's information to Racop. Plaintiff alleges this supports his claims, particularly abuse of process.

Plaintiff added ¶¶ **318-320**, which detail a May 25, 2020 memo from the City Attorney. In this memo, the City Attorney advises that, based on the facts collected, the goal of the lawsuits filed by Chris Burks on behalf of Fulk, Plummer, H. Finks, Defendant Duane Finks ("D. Finks") and Defendant Reggie Parks is not to remedy an employment issue but rather to terminate the police chief. The City Attorney noted that the lawsuits suggested considerable cooperation between various parties.

Plaintiff added ¶ **343**, which is a response from the City Human Resources Department regarding Defendant Shella Atlas-Evans' investigation into the leak of Ms. Hunter's personal information to Racop's blog. Based on this response, Atlas-Evans was unable to determine whom was responsible for the leak.

Plaintiff added ¶ **352**, which is based on an email sent to Plaintiff and various City officials, simply reads: "On July 1, 2020, RACOP invited CHIEF HUMPHREY to file a lawsuit against him."

Plaintiff added ¶¶ **368-371**, which pertain to the motions to dismiss the complaints filed by Fulk, Plummer, H. Finks, D. Finks and Parks, in whole and in part, in Pulaski County Court. Plaintiff alleges these complaints are without merit and constitute an abuse of process.

As specifically to Separate Defendant Dr. Atlas-Evans the only reference is found in paragraph 343, which provides: Plaintiff added ¶ **343**, which is a response from the City Human Resources Department regarding Defendant Shella Atlas-Evans' investigation into the leak of Ms. Hunter's personal information to Racop's blog. Based on this response, Atlas-Evans was unable to determine whom was responsible for the leak. This amendment therefore, does rise to the level of a cause of action against Separate Defendant Atlas-Evans.

"To survive a [Rule 12(b) (6)] motion to dismiss, a Complaint or Amended Complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009), quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). A claim is facially plausible when the pleaded factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id., citing *Twombly*, 550 U.S. at 556, 127 S.Ct. 1955. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id., quoting *Twombly*, 550 U.S. at 566, 127 S.Ct. 1955. A pleading must offer more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." Id., quoting *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955. Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id., citing *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955.

In evaluating a motion to dismiss under Rule 12(b) (6), the Court "must treat the complaint's factual allegations as true and must grant plaintiff 'the benefit of all inferences that can be derived from the facts alleged.' " *Sparrow v. United Air Lines, Inc.,* 216 F.3d 1111, 1113 (D.C.Cir.2000) (internal citations omitted), quoting *Schuler v. United States,* 617 F.2d 605, 608 (D.C.Cir.1979). Nevertheless, the Court need not accept inferences drawn by the plaintiff if those inferences are unsupported by facts alleged in the complaint or amended complaint, nor must the Court accept plaintiff's legal conclusions. *Browning v. Clinton*, 292 F.3d 235, 242 (D.C.Cir.2002). In ruling upon a motion to dismiss for failure to state a claim, a court may ordinarily consider only "the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint, and matters about which the Court may take judicial notice." *Gustave–Schmidt v. Chao*, 226 F.Supp.2d 191, 196 (D.D.C.2002), citing *EEOC v. St. Francis Xavier Parochial Sch*., 117 F.3d 621, 624 (D.C.Cir.1997). However, under Rule 8(a) (2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The pleading standard articulated by Rule 8 "does not require detailed factual allegations, but it [does demand] more than an unadorned, the-defendant-unlawfully-harmed-me-accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citations omitted). A "pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' " Id. (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

Section 1983 creates a private cause of action against a "person" who violates an individual's constitutional rights while acting "under color of any statute, ordinance, regulation, custom, or usage, of any State ... or the District of Columbia." 42 U.S.C. § 1983. "Because vicarious liability is inapplicable to ... § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."

*Iqbal*, 556 U.S. at 676, 129 S.Ct. 1937. "Only those who cause a violation of a right secured by the Constitution are liable." *Elkins v. District of Columbia*, 690 F.3d 554, 564 (D.C.Cir.2012), citing *Iqbal*, 556 U.S. at 676, 129 S.Ct. 1937. In this case, there is no such pleading that Dr. Atlas-Evans' own official individual actions violated the Plaintiff's Constitutional rights. The Amended Complaint mentions Separate Defendant Atlas-Evans only in paragraph twenty-five (25). Specifically:

25.     At all relevant times, SHELLA ATLAS-EVANS (hereafter "ATLAS-EVANS") was a citizen of a county in the Central Division and a resident of the State of Arkansas and, therefore, subject to the jurisdiction of the Eastern District of Arkansas Federal District Court for any acts or omissions occurring there. Moreover, at all relevant times, ATLAS-EVANS was an employee of the City of Little Rock, working in the Human Resources division.

In the HUMPHREY V. FINKS, ET AL.—AMENDED COMPLAINT ADDENDUM, Atlas-Evans is mentioned in the following twenty-three (23) paragraphs:

69.     Davis, Gilbert, Washington and Whitten complained of…pervasive pattern of many years of racial discrimination, race-based retaliation and a hostile work environment at the LRPD, all of which they each experienced.

70.     Davis, Gilbert, Washington and Whitten referenced hostility toward the LRBPOA from Chief Buckner and indicated that their October 13 complaint was "being filed as a last resort." LRPD assistant police chiefs, HAYWARD FINKS ("H. FINKS") and FULK were among the LRPD supervisors of whom Davis, Gilbert, Washington and Whitten complained in their October 13 letters. ATLAS-EVANS denied all of the officers' allegations.

85.     On March 12, 2018, Davis, Whitten and other senior black officers filed a racial discrimination and retaliation lawsuit based on the prior HR complaints presented to WITHERELL and ATLAS-EVANS and rejected by them.

190.    On September 20, 2019, ATLAS-EVANS responded to a harassment complaint Officer Latrice Williams ("Williams"), a black woman, filed against PLUMMER. ATLAS-EVANS told Williams that [t]he decision has been reached that the allegations [Williams] made against Lieutenant Cristina Plummer were unsubstantiated." In her September 20 response, ATLAS-EVANS then accused Williams of insubordination for her reaction to Plummer's conduct and threatened Williams' employment, stating:  Although the investigation did not substantiate your allegations of harassment testimony from you and witnesses indicate that you displayed insubordinate and disrespectful behavior towards Lieutenant Cristina Plummer on July 16, 2018 ... .I have determined that your account of what happened on July 6. 2018, differs from the accounts Sergeant Robert Oldham and Lieutenant Cristina Plummer reported. Your word cannot stand alone without factual support. Specifically, the accounts of Sergeant Oldham and Lieutenant Plummer revealed that you displayed insubordinate behavior towards Lieutenant Plummer by walking away from Lieutenant Plummer...

Future occurrences of exhibiting insubordinate, unprofessional, and disrespectful behavior toward supervisors will not be tolerated. Such Infractions warrant termination on the first occurrence.

191.    On September 20, 2019, ATLAS-EVANS emailed PLUMMER a copy of the response to Williams' complaint against PLUMMER, copying CHIEF HUMPHREY and WITHERELL.

192. Later that day, September 20, at 4:08 pm, CHIEF HUMPHREY emailed ATLAS-EVANS regarding her September 20 response to Williams' complaint against PLUMMER, articulating his concern with a pattern of harassment complaints made by minority officers against PLUMMER. CHIEF HUMPHREY explained his concerns to ATLAS-EVANS: I find it very concerning that everyone who files a harassment complaint against Lt. Plummer, for hostile work environment or unprofessional behavior, is accused of being insubordinate. What this does is provide a sense of entitlement for Lt. Plummer. I also find it concerning that the majority of employees who have filed hostile work environment complaints against her are minorities.

• ••••

. . . I find it hard to believe that no one observes a pattern of concerning "bullying" behavior on [Plummer's) behalf. Employees of LRPD, especially of color feel as though they are being disciplined for reporting bad behavior. • ••••

194.   On October 1, 2019, at 8:47 am, ATLAS-EVANS responded to CHIEF Humphrey's September 20 email about PLUMMER. In her October 1 response, ATLAS-EVANS told CHIEF HUMPHREY if he could "please share the basis of [his] comments [about Plummer's harassment] so [HR] can be more informed, that will be great."

195.   In early October 2019, after ATLAS-EVANS' email to CHIEF HUMPHREY, PLUMMER visited CHIEF Humphrey's office unannounced with a LRFOP representative. Flanked by her LRFOP representative, PLUMMER told CHIEF HUMPHREY that she wanted to make sure that CHIEF HUMPHREY had no personal issues with her. PLUMMER told CHIEF HUMPHREY that she wanted to make sure that he would give her a fair opportunity to advance in her career at the LRPD. PLUMMER advised CHIEF HUMPHREY that she was informed by

an unnamed source that he expressed concerns regarding her interpersonal skills and ability to work well with people.

196.    On October 23, 2019, at 12:53 pm, CHIEF HUMPHREY responded to ATLAS-EVANS' October 1 email, copying WITHERELL. He informed them of Plummer's unannounced visit to his office with her LRFOP representative. CHIEF HUMPHREY explained to ATLAS-EVANS that he was concerned that his comments to her regarding PLUMMER were shared with PLUMMER. Because CHIEF HUMPHREY had never shared his concerns about PLUMMER to anyone else at that point, he stated to ATLAS-EVANS, "I do believe certain details from my [September 20] email [to ATLAS-EVANS] were disclosed to [PLUMMER]."

197.    Later that day, on October 23, 2019, at 3:44 pm, WITHERELL responded to CHIEF Humphrey's October 23 email, copying Mayor Scott, stating: These allegations are very serious against a member of Human Resources. The allegations will have to be investigated before Dr. Atlas-Evans will be able to continue any investigation. My question to the Mayor's office is should I do the investigation or ask a member of the City Attorney's office do it? Are there any other options?

198.    On September 20, 2019, ATLAS-EVANS responded to a harassment complaint Officer Latrice Williams ("Williams"), a black woman, filed against PLUMMER. ATLAS-EVANS told Williams that "[t]he decision has been reached that the allegations [Williams] made against Lieutenant Cristina Plummer were unsubstantiated." In her September 20 response, ATLAS-EVANS then accused Williams of insubordination for her reaction to PLUMMER's conduct and threatened Williams' employment, stating:

> Although the investigation did not substantiate your allegations of
> harassment testimony from you and witnesses indicate that you displayed
> insubordinate and disrespectful behavior towards Lieutenant Cristina
> Plummer on July 16, 2018….I have determined that your account of what

happened on July 6, 2018, differs from the accounts Sergeant Robert
Oldham and Lieutenant Cristina Plummer reported. Your word cannot
stand alone without factual support.

Specifically, the accounts of Sergeant Oldham and Lieutenant Plummer
revealed that you displayed insubordinate behavior towards Lieutenant
Plummer by walking away from Lieutenant Plummer…
*****
Future occurrences of exhibiting insubordinate, unprofessional, and
disrespectful behavior toward supervisors will not be tolerated. Such
infractions warrant termination on the first occurrence [].

199. On September 20, 2019, ATLAS-EVANS emailed PLUMMER a copy of the response

to Williams' complaint against PLUMMER, copying CHIEF HUMPHREY and WITHERELL.

200. Later that day, September 20, at 4:08 pm, CHIEF HUMPHREY emailed ATLAS-

EVANS regarding her September 20 response to Williams' complaint against PLUMMER,

articulating his concern with a pattern of harassment complaints made by minority officers against

PLUMMER. CHIEF HUMPHREY explained his concerns to ATLAS-EVANS:

<u>I find it very concerning that everyone who files a harassment complaint
against Lt. Plummer, for hostile work environment or unprofessional
behavior, is accused of being insubordinate. What this does is provide a
sense of entitlement for Lt. Plummer.</u> I also find it concerning that the
majority of employees who have filed hostile work environment complaints
against her are minorities.
*****
…<u>I find it hard to believe that no one observes a pattern of concerning
"bullying" behavior on [PLUMMER's] behalf. Employees of LRPD,
especially of color feel as though they are being disciplined for reporting
bad behavior.</u>

*****

It is obvious that [PLUMMER] believes that the rules do not apply to her.
<u>Frankly speaking I believe that she feels empowered to "bully" certain
employees.</u>
*****
<u>I am not writing this email for you to change your ruling. I am writing to let
you know that officers, specifically minority officers, within the department</u>

<u>believe their complaints are not being taken seriously</u>…I would be remiss
if I didn't express my concerns…I have no reason to believe that Lt.
Plummer is a bad person. However, I do believe at some point her actions
will rise to the level of a major lawsuit being filed against the City of Little
Rock. (emphases added)

202. On October 1, 2019, at 8:47 am, ATLAS-EVANS responded to CHIEF

HUMPHREY's September 20 email about PLUMMER. In her October 1 response, ATLAS-

EVANS told CHIEF HUMPHREY if he could "please share the basis of [his] comments [about

PLUMMER's harassment] so [HR] can be more informed, that will be great."

203. In early October 2019, after ATLAS-EVANS' email to CHIEF HUMPHREY,

PLUMMER visited CHIEF HUMPHREY's office unannounced with a LRFOP representative.

Flanked by her LRFOP representative, PLUMMER told CHIEF HUMPHREY that she wanted to

make sure that CHIEF HUMPHREY had no personal issues with her. PLUMMER told CHIEF

HUMPHREY that she wanted to make sure that he would give her a fair opportunity to advance

in her career at the LRPD. PLUMMER advised CHIEF HUMPHREY that she was informed by

an unnamed source that he expressed concerns regarding her interpersonal skills and ability to

work well with people.

204. On October 23, 2019, at 12:53 pm, CHIEF HUMPHREY responded to ATLAS-

EVANS' October 1 email, copying WITHERELL. He informed them of PLUMMER's

unannounced visit to his office with her LRFOP representative. CHIEF HUMPHREY explained

to ATLAS-EVANS that he was concerned that his comments to her regarding PLUMMER were

shared with PLUMMER. Because CHIEF HUMPHREY had never shared his concerns about

PLUMMER to anyone else at that point, he stated to ATLAS-EVANS, "I do believe certain details

from my [September 20] email [to ATLAS-EVANS] were disclosed to [PLUMMER]."

205. Later that day, on October 23, 2019, at 3:44 pm, WITHERELL responded to CHIEF HUMPHREY's October 23 email, copying Mayor Scott, stating:

> <u>These allegations are very serious against a member of Human Resources. The allegations will have to be investigated before Dr. Atlas Evans will be able to continue any investigation.</u> My question to the Mayor's office is should I do the investigation or ask a member of the City Attorney's office do it? Are there any other options? We have never been in this situation before. Please advise on how I should proceed.

222. On February 7, 2020, the City of Little Rock settled Davis, et al., which alleged a long-standing pattern of racial discrimination and race-based retaliation at the LRPD. It alleged that the LRFOP had a documented history of attacking a prior African American police chief who tried to implement reforms aimed at fairness which threatened the LRFOP's oversized clout. The complaint also alleged that prior detailed, supported allegations of racial discrimination and race-based retaliation were not taken seriously by the HR Department run by ATLAS-EVANS and WITHERELL.

250. On April 30, 2020, BURKS emailed ATLAS-EVANS complaining that HR had not yet opened an investigation on CHIEF HUMPHREY. In closing, BURKS stated in his email "Please also consider this email notice of the City of Little Rock's ongoing refusal to open an investigation into Chief Humphrey."

277. On May 19, 2020, at 9:18 am, CHIEF HUMPHREY emailed Mayor Scott, Mr. Carpenter and WITHERELL, indicating his lack of confidence in the integrity of the sexual harassment investigation due to ATLAS-EVANS' friendship with FULK, one of the accusers. He explained his concern that all of the accusing parties have an association with FULK. In his May 19, 2020 email, CHIEF HUMPHREY stated that he wanted to make sure that the information that

he provided to HR—that individuals were being solicited to make false sexual harassment claims against him—would be investigated.

278. In his May 19, 2020 email, CHIEF HUMPHREY further explained his concerns that the questions comprising his interview of the prior day were not impartial. Specifically, CHIEF HUMPHREY stated that questions regarding RACOP formed part of the questioning and that this was inappropriate. Further, CHIEF HUMPHREY stated that he was concerned that ATLAS-EVANS had improper ulterior motives for prolonging the investigation.

288. In the May 26, 2020 memo, echoing BURKS' May 7, 2020 email to the City Attorney's Office, the LRFOP DEFENDANTS referenced the allegations which CHIEF HUMPHREY explained to ATLASEVANS and WITHERELL were solicited by FULK and others, stating that "numerous female officers and civilians have bravely come forward to report a disturbing pattern of inappropriate sexual comments and innuendos made by Chief Humphrey."

343. On June 26, 2020, ATLAS-EVANS' office—through WITHERELL—responded to Ms. Hunter's request for an internal investigation into the identity of the individual(s) who leaked her application and personal information. In her June 26, 2020 letter, WITHERELL acknowledged that that Ms. Hunter's application and personal information was leaked and posted on RACOP's blog. She claimed that she had HR staff investigate who accessed the documents, but they were unable to determine the identity of the person. The HR investigation did not include the taking of any statements.

In considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the pleadings are construed in the light most favorable to the non-moving party, and the facts alleged in the complaint must be taken as true. *See Ashley County, Ark. v. Pfizer, Inc.*, 552 F.3d 659, 665 (8th Cir. 2009). In addition, a court must afford the plaintiff all reasonable inferences from those

allegations. *See Blankenship v. USA Truck, Inc.*, 601 F.3d 852, 853 (8th Cir. 2010). At the same time, to withstand a motion to dismiss under Rule 12(b)(6), litigants must properly plead their claims under Federal Rule of Civil Procedure 8 and meet the principles articulated by the United States Supreme Court in *Iqbal* and *Twombly*.

### B.     Plaintiff fails to allege an understanding between Defendants.

Plaintiff alleges a conspiracy to interfere with his civil rights under the "equal protection" provisions of *42 U.S.C. § 1985(3)* against all Defendants. To state a claim for conspiracy under § 1985, a plaintiff must allege: (1) a conspiracy; (2) for the purpose of depriving another of his civil rights; (3) an act in furtherance of the conspiracy; and (4) an injury to a person or property, or the deprivation of a legal right. *McDonald v. City of Saint Paul*, 679 F.3d 698, 706 (8th Cir. 2012); *Federer v. Gephardt*, 363 F.3d 754, 757-58 (8th Cir. 2004). The "purpose" element of the conspiracy requires the plaintiff prove a racial, or otherwise class based "invidiously discriminatory animus." *City of Omaha Employees Betterment Ass'n v. City of Omaha*, 883 F.2d 650, 652 (8th Cir. 1989) (quoting *Griffin v. Breckenridge*, 403 U.S. 88, 102, 102 n. 10 (1971)); see also *Harrison v. Springdale Water & Sewer Comm'n*, 780 F.2d 1422, 1430 (8th Cir. 1986). The relevant text of Section 1985(3) provides a cause of action if:

> two or more persons conspire for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws [.]

To survive a motion to dismiss aimed at a conspiracy claim under § 1985, a plaintiff must "allege with particularity and specifically demonstrate with material facts that the defendants reached an agreement." *Johnson v. Perdue,* 862 F.3d 712, 717-18 (8th Cir. 2017) (quotation omitted). This showing can be accomplished by pointing to facts suggesting that the defendants

reached an understanding to violate the plaintiff's civil rights. *Marti v. City of Maplewood, Mo.*, 57 F.3d 680, 685 (8th Cir. 1995) (citation omitted); *Nelson v. City of McGehee*, 876 F.2d 56, 59 (8th Cir. 1989) (quotation omitted). Although an express agreement between the purported conspirators need not be alleged, there must be something more than the summary allegation of a conspiracy before such a claim can withstand a motion to dismiss; "a party may not cry 'conspiracy' and throw himself on the jury's mercy." *Mershon v. Beasely*, 994 F.2d 449, 451 (8th Cir. 1993). See also *Kelly v. City of Omaha*, 813 F.3d 1070, 1078 (8th Cir. 2016) (dismissing conspiracy claim when plaintiff failed to allege any facts showing how and when defendants came to an agreement to violate her rights).

Here, there are no allegations that Separate Defendant, Dr. Shella Atlas-Evans, and other defendants reached an understanding to violate Plaintiff's rights. In fact, there are really no allegations that Separate Defendant, Dr. Shella Atlas-Evans violated the Plaintiff's constitutional rights. There is certainly no allegation of adverse job action taken by the City. In addition, the Complaint fails to state any injury as a result of the conspiracy alleged.

### C. Plaintiff's class-of-one theory fails as a matter of law.

Furthermore, the U.S. Supreme Court held that a class-of-one theory under the Equal Protection Clause of the 14th Amendment simply does not apply in the public employment context. *Engquist v. Oregon Dept. of Agriculture*, 553 U.S. 591 (2008). As Plaintiff is a public employee, his claim fails as a matter of law on this basis as well.

### II. Plaintiff's Amended Complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b)(4).

The Plaintiff failed to properly serve Separate Defendant. Dr. Shella Atlas-Evans and the complaint must thus be dismissed under Rule 12(b)(4). The Plaintiff's process server apparently

left a bundle of papers in a mail box and falsely signed the Proof of Service indicating the he

"personally served the summons on the individual at (place) Residence via Certified US Mail on

10/9/20", in contravention of the requirement for proper service under Rule 4 (c)-(d) of the

Federal Rules of Civil Procedure, This was not only in error but a false attestation by the process

server. Either Dr. Atlas-Evans or anybody else residing at her residence were personally served

with the Summons and Complaint.

     "Service of process, under longstanding tradition in our system of justice, is fundamental

to any procedural imposition on a named defendant." *Murphy Bros., Inc. v. Michetti Pipe*

*Stringing, Inc*., 526 U.S. 344, 350 (1999). "In the absence of service of process (or waiver of

service by the defendant), a court ordinarily may not exercise power over a party the complaint

names as defendant." *Id*. "If a defendant is improperly served, a federal court lacks jurisdiction

over the defendant," *Printed Media Servs., Inc. v. Solna Web, Inc*., 11 F.3d 838, 843 (8th Cir.

1993) (citation omitted), even though a defendant "had actual notice of the lawsuit." *Adams v.*

*AlliedSignal Gen. Aviation Avionics*, 74 F.3d 882, 885 (8th Cir. 1996) (citing *Printed Media*

*Servs.,* 11 F.3d at 843). The standard of review for a Rule 12(b) (5) motion to dismiss is the same

as that used for a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction. See *Disability*

*Support All. v. Billman*, No. CV 15-3649 (JRT/SER), 2016 WL 755620, at *2 (D. Minn. Feb. 25,

2016). To survive a motion to dismiss for insufficient service, "a plaintiff must plead sufficient

facts to support a reasonable inference the defendant" has been properly served. See *Creative*

*Calling Sols., Inc. v. LF Beauty Ltd*., 799 F.3d 975, 979 (8th Cir. 2015) (internal marks omitted)

(citation omitted). A plaintiff bears the burden of proof on the issue of service by a

preponderance of the evidence that service was proper. *Id*. Although the certified mail "green

cards" may indicate actual notice of this lawsuit, actual notice does not dispense with the

requirements for proper service of process. See, e.g., *McGinnis v. Shalala*, 2 F.3d 548, 551 (5th Cir.1993) (delivery by certified mail may provide actual notice of suit, but does not satisfy adequate service requirements of Rule 4); *Mid–Continent Wood Products, Inc. v. Harris*, 936 F.2d 297, 301–303 (7th Cir.1991)(rejecting district court's test for grounds for exception to strict compliance with Rule 4's service of process requirements where defendant had actual notice, holding that "valid service of process is necessary in order to assert personal jurisdiction over a defendant."); *Friedman v. Estate of Presser*,929 F.2d 1151, 1155 (6th Cir.1991) ("For the great majority of courts ... actual knowledge of the law suit does not substitute for proper service of process under [former] Rule 4(c)(2)(C)(ii)," citing cases so holding, including cases basing this conclusion on legislative history.); *Schnabel*, 922 F.2d at 728 (actual notice of lawsuit does not eliminate requirement of proper service); *Young v. Mt. Hawley Ins. Co*., 864 F.2d 81, 82–83 (8th Cir.1988), cert. denied, 493 U.S. 919, 110 S.Ct. 281, 107 L.Ed.2d 261 (1989) (same). This court concludes that if actual notice could substitute for proper service of process, it would be nonsensical for the Federal Rules of Civil Procedure to provide for a motion to dismiss based on insufficiency of service of process, Fed.R.Civ.P. 12(b) (5), because no such motion could be filed without actual notice of the lawsuit. *Accord Grand Entertainment Group, Ltd. v. Star Media Sales, Inc.*, 988 F.2d 476, 492 (3d Cir.1993) ("Notice to a defendant that he has been sued does not cure defective service, and an appearance for the limited purpose of objecting to service does not waive the technicalities of the rule governing service."). Thus, actual notice of this lawsuit by defendants does not substitute for adequate service of process, and the grounds for dismissal pursuant to Fed.R.Civ.P. 12(b)(5) are present here.

However, the "general rule" is that " 'when a court finds that service is insufficient but curable, it generally should quash the service and give the plaintiff an opportunity to re-serve the

defendant.' " See, e.g., *Gregory v. United States Bankruptcy Court*, 942 F.2d 1498, 1500 (10th

Cir.1991)(quoting *Pell v. Azar Nut Co*., 711 F.2d 949, 950 n. 2 (10th Cir.1983)), cert. denied,

504 U.S. 941, 112 S.Ct. 2276, 119 L.Ed.2d 202 (1992). However, dismissal may be proper

without opportunity to cure where proper service would be futile. *Gregory*, 942 F.2d at 1500.

 Under Rule 4(e)(2) of the Federal Rules of Civil Procedure, a plaintiff may effect service

by leaving a copy of each [the summons and of the complaint] at the individuals dwelling or

usual place of abode with someone of suitable age and discretion who resides there..." FED R.

CIV. P. 4(e)(2)(B). The Eighth Circuit has held that a signed return of service constitutes prime

facie evidence of valid service, "which can be overcome only by strong and convincing

evidence." *Hicklin v. Edwards*, 226 F.2d 410, 414 (8th Cir.1955). However, there is no prima

facie effect of service when the process server fails to leave the summons and complaint at the

residence with someone of suitable age and discretion who resides there. *Greater St. Louis

Constr. Lab. Welfare Fund v. Little*, 182 F.R.D. 592 (E.D.Mo.1998).

 It has now been over three weeks since the filing on September 30, 2020, yet Separate

Defendant has not been personally served. Plaintiff could have left waiver of service forms, or

taken the time and expense to personally serve Separate Defendant. Instead, he did neither. His

claims should be dismissed as such.

CONCLUSION

 For all of the foregoing reasons this Complaint should be dismissed.

      Respectfully submitted,

      Thomas M. Carpenter
      City Attorney

      By: Rick D. Hogan Bar #83084
         Deputy City Attorney

Office of the City Attorney
500 West Markham, Suite 310
Little Rock, Arkansas 72201
(501) 371-4527
rhogan@littlerock.gov